[No. 18085.   In Bank.—February 20, 1894.]

## T. W. WILHELM ET AL., APPELLANTS, *v.* HENRY SILVESTER, RESPONDENT.

MINING CLAIMS—LOCATION OF CROSS LEDGE.—A subsequent location of a gold-bearing quartz lode crossing the claim of a prior locator of another lode confers no right upon the subsequent locator to any portion of the cross lode, which lies within the boundaries of the first location.

ID.—CONSTRUCTION OF REVISED STATUTES.—Section 2322 of the Revised Statutes of the United States, giving to locators of quartz claims "the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines, extended downward vertically," is not overcome or repealed, or in any way rendered nugatory by section 2336 regulating the intersection of two or more claims, which applies only to intersections consistent with all the provisions of section 2322.

ID.—CONSTRUCTION OF CONFLICTING SECTIONS.—The rule of construction that, as between conflicting sections of the same statute, the last in order of arrangement will control, is to be invoked only as a last resort, and where the conflict is so sharp and complete as to leave no possible room for giving both effect; it cannot be applied where the provisions are capable of reconciliation.

APPEAL from a judgment of the Superior Court of Nevada County.

The facts are stated in the opinion of the court.

*Kitts & Bowman,* for Appellants.

*A. Burrows,* for Respondent.

McFARLAND, J.—This case was submitted to the court below upon an agreed statement, which shows the following facts: Defendant's grantor, in December, 1879,

discovered a gold-bearing quartz vein, which he called the New Idea Lode, and made a valid location thereof, including surface ground fifteen hundred feet long and six hundred feet wide. The New Idea Lode runs nearly north and south through the center of said surface ground, and the land on which the location was made was at the time public, unclaimed, and unoccupied public land of the United States. It is admitted that said location was a valid one, and that since then defendant and his grantor have complied with all the laws and customs necessary to continue the validity of said location. About a year afterwards, to wit, on December 4, 1880, the plaintiffs discovered a gold-bearing lode which commenced east and outside of the said New Idea claim, and thence ran westerly across said New Idea claim at nearly right angles, and intersected said New Idea Lode, and they attempted to locate a claim fifteen hundred feet long and six hundred feet wide across the said prior location of the defendant, and did the formal acts which are required by mining laws and customs in making valid locations, and have since done the necessary work, etc., to maintain said location. The said asserted location of plaintiffs is called the South Scotia Lode and Claim, and they contend that by said subsequent attempted location they have acquired the title to, and right of possession of, the said South Scotia Lode where it lies within the surface ground of said defendants' New Idea claim. Defendants claim that the plaintiffs, by said attempted subsequent location, acquired no right whatever to any portion of the said South Scotia Lode which lies within the boundaries of defendants' location. The plaintiffs brought this action to enforce their right to the South Scotia Lode within the limits of the said prior location of defendants. The court found in favor of defendants, and the plaintiffs appeal from the judgment.

We think that the decision of the superior court was right, and that the judgment should be affirmed. Section 2322 of the Revised Statutes of the United States,

which is a re-enactment in this respect of the act of
May 10, 1872, provides that the locators of quartz claims
where no adverse claim existed on the 10th of May, 1872,
so long as they comply with the laws of the United
States and local customs, "shall have the exclusive right
of possession and enjoyment of all the surface included
within the lines of their locations, and of all veins,
lodes, and ledges throughout their entire depth, the top
or apex of which lies inside of such surface lines, ex-
tended downward vertically." This language is clear
and explicit, and in designating the property rights of
locators is in no wise ambiguous or uncertain. It ex-
pressly, and in language which needs no construction,
grants to such locators every ledge or lode, the top or
apex of which lies within the surface lines of the loca-
tion, that is, such part of the ledge as lies within such
lines. And there is no limitation or exception of any
such ledge on account of the direction in which it
may run. It may be parallel with the originally discov-
ered ledge, or may approach it at right angles, or at an
obtuse angle, or at an acute angle, it may intersect it or
not, and still it will be clearly within the language of
the said section.

It is contended, however, by appellants that this posi-
tive language of said section 2322 is overcome, or re-
pealed, or in some way rendered nugatory by the
provisions of section 2336 of said Revised Statutes.
That section is as follows: "Where two or more veins
intersect or cross each other, priority of title shall gov-
ern, and such prior location shall be entitled to all ore
or mineral contained within the space of intersection;
but the subsequent location shall have the right of way
through the space of intersection for the purposes of
the convenient working of the mine. And where two
or more veins unite, the oldest or prior location shall
take the vein below the point of union, including all
the space of intersection." It will be observed, how-
ever, that this latter section does not undertake to give
to any person the right to make a valid *location* of a

quartz ledge across either the surface ground or the lode of a prior locator. It merely assumes that there may be instances where there may be certain kinds of inter-sections of lodes where both the prior and the latter locators may have some rights. And if there can be a reasonable and apparent construction of section 2336 by which it will not be in conflict at all with section 2322, then such construction should govern. Now there are cases where the owners of ledges which intersect may each have rights entirely distinct from, and which do not conflict at all with, the clear and positive lan-guage of section 2322. Passing the consideration of the possibility of a subsequent locator acquiring rights as against the prior locator by adverse user, it must be remembered that the Revised Statutes were not intended to impair the rights of quartz miners in cases where the locations were made before May 10, 1872. (Rev. Stats., sec. 2344.) Prior to the time when Congress undertook to legislate upon the subject of the location of quartz mines, such location was regulated entirely by local rules and customs; and while those rules and customs had a general similarity throughout mining regions, there were still some districts in which they differed quite materially from the general customs. For in-stance, in some localities quartz claims were held by square location, the owner not being allowed to go be-yond his side lines to follow his lead under ground; and in other localities there were what are known as ledge locations—that is, where the ledge alone was located without any surface ground. Now, then, the pro-visions of section 2336 can readily be construed as in-tending to protect the rights of such old ledge locations. But in the second place there are two kinds of intersec-tions of quartz ledges. They sometimes intersect, and sometimes unite, in their horizontal extension, or, as the miners call it, their *strike;* but they may also inter-sect or unite on their *dip;* that is, they may intersect laterally in their downward course. Now, when they intersect laterally, as last above stated, the owner of each

ledge has rights at the point of intersection entirely consistent with all of the provisions of section 2322. In such a case the owner of a claim on land adjoining that of a prior locator would have a right to follow his ledge as it dipped laterally underneath the surface ground of his neighbor, and if his ledge intersected the ledge of the prior locator he would have the right of way through it under the statute, the older locator merely having the quartz at the exact point of intersection; but his right to thus follow his vein underground would be an entirely different thing from the right asserted in the case at bar by appellant to enter upon the surface of defendants' prior location and locate a claim, the top or apex of which was within the surface location of defendants' ground. And to such an intersection the provision of section 2336 can be readily applied in perfect consistency with the provisions of section 2322.

Moreover, there is strong reason for thinking that such an intersection was the very one in the mind of Congress when it passed section 2336; for in that section, and speaking of the same subject, it says that: "where two or more veins *unite,* the oldest or prior location shall take the vein *below* the point of union," and if the other kind of intersection was in the minds of the legislators at that time, they would not have used the word "below"; for "below" would not apply at all to a union on the strike of two veins, such as the appellants' rights depend on in the case at bar. These views make the two sections under review entirely harmonious; and the fundamental rule of construction is to reconcile apparently contradictory provisions of the statute where it can be reasonably done. And, if we look at the apparent intention of Congress, there would seem to be no possible reason for giving to the first locator all the veins within his surface lines, except those that happen to run in a particular way. Under appellants' contention, if the course of a vein was such that it intersected with the original vein of the prior locator a few feet before it reached the end line, it would

not belong to such original. locator; but, if the point of intersection was a few feet beyond his end line, then he would own it.   There would be no good reason for supposing that Congress intended such a result when not using any language to express such intention.   Moreover, how was it possible for appellants to locate any part of a quartz ledge on the surface of respondents' claim?   It is the universal rule that a valid mining location can be made only upon unappropriated public land—that is, at least as against the prior appropriator. It was even held by the supreme court of the United States in *Guillim* v. *Donnellan*, 115 U. S. 85, that a mining location made partly upon a former valid location was void throughout its entire length as against a third party.   That is no doubt a somewhat extreme doctrine, but it is certainly clear that such a location is invalid as against the prior appropriator himself; and, as in the case at bar the appellants' whole claim rests upon a location made within and on top of the former valid location of the respondents, it is impossible to see how there is any basis at all for his asserted rights.   And it must be remembered that section 2336 refers to a case where "priority of *title*" governs; and, of course, it can have no application to a party who has no title.

We are aware that the supreme court of Colorado, in *Branagan* v. *Delaney*, 8 Col. 408, reached a different conclusion on this question; but, while we have the highest respect for the decisions of that court, we are not able to concur with its conclusion on the point under discussion.   The opinion in that case went upon the theory that the two sections of the Revised Statutes above referred to are utterly inconsistent, and the court say: "We see no way out of the dilemma, except by the application of the arbitrary rule of construction suggested by the court in the case of *Hall* v. *Equator etc. Co.*, reported in Morrison's Mining Rights, 3d ed., page 282, that, as between conflicting statutes, the latest in date will prevail, and, as between conflicting sections of the same statute, the last in the order of arrangement

will control." But that rule of construction is to be invoked only as a last resort, and where the conflict is so sharp and complete as to leave no possible room for giving both effect; and, as appears from the views above expressed, in our opinion, there is no such conflict between the two sections named. Both, in our opinion, can easily stand together, and we see no difficulty in reconciling them. The construction contended for by appellants would leave the rights of prior locators in the greatest confusion; their property interests in their claims would be undefined, and the result would be ruinous litigation and perhaps personal conflicts. But to give section 2322 its clear and undoubted meaning is to accurately fix the rights of prior locators as we think Congress clearly intended them to be fixed.

(After the foregoing opinion had been written, our attention was called to the case of *Waterville Mining Co.* v. *Leach,* decided by the supreme court of Arizona, 33 Pac. Rep. 418, in which that court reached the same conclusion as that heretofore stated. In the opinion of the court, delivered by Kibbey, J., there is an elaborate discussion of the subject, leading to the result that section 2336 does not conflict with nor does it in any way repeal any part of section 2322; that the former section had reference to mining rights existing prior to its passage; and that "Congress had in mind, at the time of the enactment of the law of 1872, that, *as mining rights then stood,* A's lode might legally cross B's lode on the strike.")

The judgment is affirmed.

HARRISON, J., FITZGERALD, J., GAROUTTE, J., and PATERSON, J., concurred.

DE HAVEN, J., dissented.

BEATTY, C. J. (concurring.)—I concur in the judgment and in the conclusion of the court as to the proper construction of sections 2322 and 2336 of the Revised Statutes. I think, however, that too much is conceded

both in the opinion of the court and in the argument of counsel for respondent in assuming that the provisions of section 2336 cannot be applied to locations made since the passage of the mining law of 1872, on veins which intersect upon their strike, without bringing it in conflict with the plain terms of section 2322. This wholly unwarranted assumption has been the source of all the trouble and difficulty which the land office and some of the state courts have encountered in their attempts to construe provisions of a statute which are in perfect harmony, but which have been erroneously supposed to be inconsistent.

The sum of the argument in favor of the construction thus imposed upon the statute—which is in effect a nullification of the express terms of section 2322, and a relegation of mining rights to the same condition of uncertainty and confusion in which they were before the act of Congress was passed—has been that section 2336 must be allowed some operation and effect; that its only possible application is to veins which cross on their strike, because parallel veins never do intersect on their dip, and that if it is to be applied to veins which cross on their strike, the necessary inference is that Congress intended that the discoverer of a cross vein should have the right to lay his surface location across the surface location of the intersected vein. But in truth this conclusion is a perfect *non sequitur*. There is no proposition in geometry plainer or more easily demonstrable than this: that surface locations on cross veins may be so made as not to conflict, while at the same time the portions of the veins included in or covered by the respective locations will intersect in depth—in some cases within the surface lines of one or the other location extended downward vertically, and in other cases altogether without the surface lines of both locations. This results from the fact that veins generally, if not universally, descend into the earth, not vertically, but at a greater or less inclination or dip. This being so, and the law allowing the locator to follow his vein on its dip outside

of his side lines projected downward vertically, and within the vertical lines of an adjoining or neighboring claim, it may easily happen that the parts of two intersecting veins included within entirely distinct surface locations will intersect in depth either outside of both claims or within one or the other, according to the angle of the dip and the relation of the surface claims to the point where the apices or croppings of the veins intersect.

Suppose, by way of illustration, a north and south vein dipping to the west, intersected by an east and west vein dipping to the north at the same angle. Assuming these veins to be perfectly regular in strike and dip, their intersection will be along a diagonal line descending into the earth from the point of intersection at the croppings (which for brevity I will call point A), and extending in its horizontal projection to the northwest. Now, suppose a location on the north and south vein, commencing three hundred feet or more north of point A, and extending to the north along the vein. It is evident that a full surface claim, fifteen hundred feet in length, and extending three hundred feet on each side of the croppings, may be located on the east and west vein without at all conflicting with the supposed location on the north and south vein, and it is equally evident that such location may be made to include point A, or altogether east of it or west of it. If made wholly to the east it will not include any part of the intersection at the surface or below the surface. If made to extend but a short distance west of point A it will include some of the intersection, but the diagonal of the line of intersection will carry it beyond the vertical plane of the west end line before the dip of the vein carries it beyond the south line of the other location. If made somewhat further to the west, the intersection will fall more or less within the surface lines of the north and south location, and will make a case for the application of section 2336. If made still further to the west, the line of intersection of the portions of the re-

spective veins covered by the two locations will be wholly outside of the surface lines of either location, and still another case for the application of section 2336 will arise. Here, then, are two cases for the application of section 2336, without bringing it in conflict with section 2322, and the mere possibility that such cases might some time arise under distinct locations, each entitled to all the rights conferred by the plain terms of section 2322, was a sufficient reason for incorporating in the law the provisions of section 2336.

Of course, the hypothesis of two perfectly regular veins dipping at the same angle and crossing at right angles is one which will never be realized. But the very fact that veins, instead of being regular and uniform in strike and dip, are in every way irregular and eccentric, increases the possibility of intersections of cross veins under ground, outside of the lines of surface locations, and so far from diminishing the force of the illustration used, only proves how infinitely it might be varied.

If these views are correct, it follows that the only reason ever suggested for construing section 2322 against the plain import of its terms is based upon a geometrical absurdity; and the practice of miners in making, and of the land office in permitting, cross locations on the surface, is without any justification in the mining law.