# SUPREME COURT

OF THE

## STATE OF COLORADO.

### SEPTEMBER TERM, 1899.

[No. 3954.]

THE CALHOUN GOLD MINING CO. *v.* THE AJAX GOLD
MINING CO.

|  |  |
|---|---|
| 27 | 1 |
| e29 | 385 |
| 27 | 1 |
| e30 | 509 |
| 27 | 1 |
| f37 | 186 |

1. APPELLATE PRACTICE—STARE DECISIS.
A wrong decision of the court should not be followed unless it has been
its rule of action so long, and relied upon to such an extent, that
greater injustice and injury will result from a reversal, though
wrong, than to observe and follow it.

2. SAME.
Where the decision of a tribunal is subject to review by one having
superior authority over it, for that purpose, or the same question
may be passed upon by the superior tribunal in another case, the
doctrine of *stare decisis* does not apply with full force till the ques-
tion has been determined by the court of last resort.

3. SAME—ACT OF CONGRESS.
The construction of an act of congress cannot be said to be authorita-
tively settled until passed upon by the supreme court of the United
States.

4. MINES AND MINING—SURFACE RIGHTS OF LOCATOR.
Prior to the act of congress of 1872, relating to mining claims, the
rights of a locator were practically limited to the vein upon which
his location was made. Rights to the surface ground only attached

for the purpose of the convenient working of the vein, and no rights to any other vein, except the one upon which the location was made, were given ; but by the act of 1872, the surface area which could be controlled by one location was definitely fixed, and the rights of the locator were extended so as to give him exclusive right of possession and enjoyment of the surface included within the lines of his location, and of all veins throughout their entire depth apexing inside of such surface lines extended downward vertically, although such veins might so far depart from a perpendicular in their course downward as to extend outside the vertical side lines.

5. MINES AND MINING—CROSS VEINS.

Veins apexing within the conflict between conflicting claims, located under the act of 1872, belong to the prior locator within the surface boundaries of his claim extended downward vertically. Where veins located under the act of 1872 cross each other on their strike, the prior locator is entitled to all the ore of the cross vein within the surface boundaries of his location extended downward vertically. The junior locator has an easement for right of way to follow his vein across the prior location for the convenient working of the prior location for the convenient working of the convenient working of his mine, but not for the purpose of taking any ore from within the surface boundaries of the prior location. *Branagan v. Dulaney*, 8 Colo. 408, overruled.

6. SAME—TUNNEL SITE LOCATIONS—UNDISCOVERED VEINS.

The statute giving to locators of mining claims the right to all veins apexing within the boundaries of the surface lines extended downward applies to undiscovered as well as discovered veins, and whether the apex within the boundaries is at the surface or beneath the surface. Section 2323, United States Rev. Stats., giving to tunnel site locators the right of possession of all veins or lodes within 3,000 feet from the face of the tunnel gives to such locators no right to blind or undiscovered veins that it may cut underneath and within the boundaries of a prior valid surface location. A tunnel site locator has no right of way to project his tunnel into or across prior valid locations, for the purpose of searching for or discovering blind veins within the territory of such prior locations.

7. PRACTICE—EVIDENCE—COLLATERAL ATTACK.

As against a collateral attack, the action of the land department in issuing a patent to a mining claim is conclusive that all steps necessary to a valid location have been taken. In an action between a tunnel site locator and a prior lode locator, involving the right to a blind vein cut by the tunnel underneath the lode location, evidence offered by the tunnel locator to prove that at the time of the location of the tunnel no discovery of mineral in place had been made on the lode location, was properly rejected.

8. MINES AND MINING—TUNNEL SITE AND LODE CLAIMS—PRACTICE.
A tunnel site locator in attempting to acquire title to blind veins under-
neath a prior lode location by projecting the tunnel across such
lode claim, is a trespasser, and in an action between the claimants
to determine the title to such veins, a motion by the tunnel locator
for leave to develop the blind veins in the tunnel within the lines
of the lode claim for the purpose of establishing the character of
the veins, was properly denied.

*Appeal from the District Court of El Paso County.*

Mr. W. E. SO RELLE, for appellant.

Messrs. COLBURN & DUDLEY and Mr. J. C. HELM, for
appellee.

MR. JUSTICE GABBERT delivered the opinion of the court.

Appellee, the owner of the Monarch, Mammoth Pearl, Apex
and Champion lode mining claims, commenced this action in
the court below to recover damages and restrain appellant, as
defendant, from removing ore claimed to be within the bound-
aries of these claims, and to which it asserted it was entitled
by virtue of such ownership, and also to restrain defendant
from prosecuting work upon a tunnel which the latter was
excavating underneath such claims.   Defendant answered,
justifying its removal of ore and excavation of the tunnel upon
two grounds :  (1)  That it was the owner of the Victor Con-
solidated claim, the vein of which crossed each of those em-
braced within the claims of plaintiff.   (2)  That it was the
owner of the Ithica tunnel site, projected across these claims,
by virtue of which it was entitled to extend a tunnel under-
neath them.   That in prosecuting work thereon, it had pene-
trated the claims of plaintiff, and discovered, located and
claimed numerous blind veins underneath the surface of such
claims ; that it had also cut the vein of its Victor Consoli-
dated claim in this tunnel, underneath the surface of plain-
tiff's claims and removed ore therefrom of the value of $400,
and that it claimed to be entitled to excavate and run this

tunnel for the purpose of discovering such blind veins, to work and remove ore therefrom, and from its Victor Consolidated vein. By stipulation the Champion was dropped from the case. Upon the issues made by the pleadings, the facts thereby admitted, a stipulation as to those controverted, and certain documentary evidence, the cause was tried to the court, which resulted in a judgment, adjudging plaintiff to be the owner in fee of each of its lode claims in controversy in their entirety as patented, and, *inter alia*, with respect to veins, " together with all veins, lodes or ledges having their tops or apexes therein, and including all that portion of the said Victor Consolidated vein within the side and end lines of the plaintiff's said claims, extended downwards vertically," for damages in the sum of $400, and also enjoining defendant from prosecuting work upon, or extending its tunnel underneath, the claims of plaintiff, and, with respect to removing ore, enjoined defendant (employing the language of the judgment) " from further taking out, extracting, or removing ore by means of said tunnel, or otherwise, from within the side and end lines of plaintiff's said claims, extended downward vertically." From this judgment, the defendant brings the cause here on appeal.

The controversy over the right of appellant to extend its Ithica tunnel is from the point where it enters the Monarch on the southerly side, and thence across the claims of plaintiff. The blind leads discovered are in that portion of the tunnel between the point where it enters plaintiff's claims on the south, and the breast of its excavation. The vein of the Victor Consolidated is also cut in this tunnel at point marked 961. The conflict in the lode claims of the respective parties is included in the territory bounded by the south side line of the Monarch, the north side line of the Mammoth Pearl, and the side lines of the Victor Consolidated between these two lines. The reproduction of the plat (page 5) which the parties stipulated below was correct, showing the relative location of the respective properties over which this controversy arises, will materially aid in understanding the questions involved.

We are relieved from stating the pleadings to any considerable extent, or determining the questions of law thereby presented, because on the trial below, it was stipulated that the following are involved:

" *First.* Whether or not the Ithica tunnel, in such pleadings described, is entitled to a right of way through plaintiff's lode claims.

" *Second.* Whether or not defendant has acquired by virtue of said tunnel and tunnel site location, the ownership and right to the possession of the blind veins cut therein, to wit, veins or lodes not appearing on the surface, and not known to exist prior to the date of location of said tunnel site.

" *Third.* Whether or not defendant is the owner and entitled to the ore contained in the vein of its Victor Consoli-

dated claim, within the surface boundaries, and across plaintiff's lode claims.

"*Fourth.* Whether or not the defendant may in this cause introduce evidence for the purpose of showing that there was no discovery of mineral in place on the Monarch and Mammoth Pearl claims of plaintiff, prior to the location of said tunnel site."

From the pleadings, evidence and stipulation of the parties, the facts established, so far as material to the controverted questions of law involved, are, that each of appellee's claims was located prior to either the lode claim or tunnel site of appellant; that the receiver's receipt on each of the claims of appellee issued prior to the location of the tunnel site, and prior to the issuance of receiver's receipt on the Victor Consolidated; that the patents upon the lode claims of appellee issued prior to the patent on the lode claim of appellant; that the patent to the Apex issued prior to the location of the tunnel site, and on the Mammoth Pearl and Monarch subsequent to such location; that the vein of the Victor Consolidated was discovered and located from the surface; was not known to exist prior to such discovery, extends throughout the entire length of that claim, and on its strike crosses each of the veins in the claims of appellee upon which they were respectively discovered and located; that the tunnel cuts numerous blind veins underneath the surface of the claims of appellee, which do not appear upon the surface, and were not known to exist prior to the location of the tunnel; that the vein of the Victor Consolidated was cut in this tunnel underneath the claims of appellee, and ore of the value of $400 removed therefrom. It also appears that the patents upon the lode claims of appellee embrace the conflict with the Victor Consolidated without any reservation as to either surface or veins, and in this respect conform to the receiver's receipts upon such claims; that the patent on the Victor Consolidated excludes the surface in conflict with the claims of appellee, and all veins having their apex within such conflict, which are the same exceptions contained in the

receiver's receipt for that claim; that the portal to the Ithica tunnel site was, at the date of its location, on public domain; that work thereon was prosecuted diligently, and that the location of such tunnel was in all respects regular; that all necessary steps were taken by appellant to locate the blind veins cut in such tunnel, which are in controversy in this case; that the record titles of the claims of appellee are vested in it, and the record titles of the Victor Consolidated, the Ithica tunnel site, and blind veins discovered therein underneath the claims of appellee are vested in appellant. The record discloses that appellant offered testimony tending to prove that at the date of the location of its tunnel site, mineral in place had not been discovered on the Monarch and Mammoth Pearl lode claims. The rights of the parties depend principally upon a construction of the following sections of the Revised Statutes of the United States:

"Sec. 2322. The locators of all mining claims heretofore made or which shall hereafter be made, on any mineral vein, lode or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins, lodes, or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or

ledges. And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another.

" Sec. 2323. Where a tunnel is run for the development of a vein or lode, or for the discovery of mines, the owners of such tunnels shall have the right of possession of all veins or lodes within three thousand feet from the face of such tunnel on the line thereof, not previously known to exist, discovered in such tunnel, to the same extent as if discovered from the surface; and locations on the line of such tunnel of veins or lodes not appearing on the surface, made by other parties after the commencement of the tunnel, and while the same is being prosecuted with reasonable diligence, shall be invalid; but failure to prosecute the work on the tunnel for six months shall be considered as an abandonment of the right to all undiscovered veins on the line of such tunnel."

" Sec. 2338. Where two or more veins intersect or cross each other, priority of title shall govern, and such prior location shall be entitled to all ore or mineral contained within the space of intersection; but the subsequent location shall have the right of way through the space of intersection for the purposes of the convenient working of the mine. And where two or more veins unite the oldest or prior location shall take the vein below the point of union, including all the space of intersection."

The main questions presented for our determination, for convenience, we summarize as follows:

1. Is appellant the owner and entitled to the ore contained in the veins of its Victor Consolidated claim within the surface boundaries of appellee's lode claims?

2. Has appellant acquired, by virtue of its tunnel site location, the ownership and right of possession to the blind veins cut therein underneath appellee's claims, and is its tunnel entitled to a right of way through the lode claims of appellee?

3. Should appellant have been permitted to introduce evidence for the purpose of showing that there was no discovery of mineral in place on the Monarch and Mammoth Pearl claims of appellee prior to the location of the Ithica tunnel site?

All these were answered in the negative by the court below.

The first question presented involves, particularly, a construction of section 2336, *supra*. The rights of a junior location to the ore of its vein embraced in the conflict with a senior have been determined by this court in *Branagan v. Dulaney*, 8 Colo. 408, and in several subsequent cases, which have adopted the doctrine announced in that case on this subject, and if we adhere to the law as announced in those cases, then the rights of appellant to the ore in the vein of the Victor Consolidated included in the territory of that claim conflicting with that of appellee, are fixed and settled; for under those decisions it would be entitled to all this part of its vein, except where it intersects the veins of appellee's claims. It is contended by counsel for appellee that the ruling in *Branagan v. Dulaney* and cases following it, is wrong and that this question should now be reconsidered. In opposition to a reconsideration of the rights of cross lode claimants, as declared by those cases, it is urged that the doctrine of *stare decisis* applies, and even if wrong, should not now be disturbed, because the rule therein announced has been established for such great length of time as to become a settled rule of property in this state. We are aware of the gravity of reversing a long established precedent, and realize that it should not be disturbed except for the most cogent reasons; that the people of this commonwealth have a right to presume that when a question has been once settled by this court that its decision is correct and that all may rely upon it. We understand, generally, that when a decision has established a settled rule of property, upon which rights are predicated (and especially those relating to real estate), the law will be adhered to by the court announcing

it, and those bound to follow its adjudications, even if erroneous (Black on Interpretation of Laws § 152), but this rule is not inflexible. Courts are not bound to perpetuate errors merely upon the ground that a previous erroneous decision has been rendered on a given question. If it is wrong, it should not be continued, unless it has been so long the rule of action, and relied upon to such an extent, that greater injustice and injury will result by a reversal, though wrong, than to observe and follow it. Black on Interpretation of Laws, *supra;* Sutherland's Stat. Constr. § 316; *Boon v. Bowers,* 30 Miss. 246.

The law as announced in *Branagan v. Dulaney,* has led to much confusion, and has been a fruitful source of litigation. Under it doubts have been cast upon titles to mining properties, and supposed rights reduced to uncertainties. Judging by the experience of the past, coupled with the knowledge of the present great activity in mining, to some extent caused, perhaps, by the marked improvements in mining and the reduction of ores, this industry is comparatively in its infancy in this state; and if the rule regarding cross leads as announced by this court is wrong, it will result in more injury in the future to perpetuate it than will temporarily be caused by its reversal. It is a matter of common knowledge, that ever since the decision of this court on that question, its correctness has been doubted by many eminent members of the bar of this state familiar with mining law, and has even been the subject of expression to that effect by this court (*The Argonaut C. M. & M. Co. v. Turner,* 23 Colo. 400), in which it was said, in speaking of the rights conveyed by patent to a mining claim, that it conveys all lodes or veins having their apexes within the boundaries of such claim, except, perhaps, cross lodes. This doubt has been generally entertained by those engaged in mining, so that notwithstanding the length of time which has elapsed since the rendition of the first decision of this court on this question, it is safe to assume that it has not been implicitly relied upon as a sound exposition of the law relating to cross leads, and that in the

great majority of instances parties have governed themselves accordingly.

The law construed in *Branagan v. Dulaney*, is an act of congress. The doctrine of *stare decisis* is based upon the assumption that the rules of law to which this doctrine applies have previously been determined by a court having final jurisdiction of the questions involved. For this reason, where the decision of a tribunal is subject to review by one having superior authority over it, for that purpose, or the question determined may be passed upon by such tribunal in another case, the doctrine of *stare decisis* does not apply with full force until the same questions have been determined by the court of last resort. The construction of an act of congress cannot be said to be authoritatively settled until passed upon by the highest court authorized so to do. This is the supreme court of the United States. It has never decided the question regarding cross veins as presented in the case at bar. The decision of this court on that question may be reviewed by that tribunal; so that although this court has given the statutes affecting cross lodes a construction which has since been followed in this state, nevertheless, as these same statutes are still open to construction by the highest tribunal of the land, their meaning on the subject of cross leads as involved in this case has not been finally determined so as to become *stare decisis*. In Arizona, California and Montana a different construction regarding the rights of cross lode claimants has been given from that announced by the supreme court of this state. *Watervale M. Co. v. Leach*, 33 Pac. Rep. 418; *Wilhelm v. Silvester*, 101 Cal. 358; *Pardee v. Murray*, 4 Mon. 234.

Whether or not the reasons given for this conclusion are sound, is not material. Sooner or later this question must be determined by the supreme court of the United States, and when it is, the law thus settled must be followed by all the courts of the states and territories in which the act in question is in force. For these reasons, we conclude that although this court has passed upon the identical question

regarding cross veins now involved, it is not precluded from again considering it, under the doctrine of *stare decisis*, or that the law as announced by this court in previous cases has become a settled rule of property in this state; and if upon a reconsideration of such question we conclude that our previous decisions thereon were wrong, we should not wait for a superior tribunal to so declare.

Before proceeding, however, with a discussion of this question, we suggest that were it not for the expression in *The Argonaut C. M. & M. Co. v Turner, supra,* the action of the trial court, in refusing to follow *Branagan v. Dulaney,* would certainly be subject to criticism.

Previous to the act of 1872 relating to mining claims, which with a few modifications, has been in force ever since its passage, the rights of a locator were practically limited to the vein upon which his location was made. That was the thing granted; the rights to surface ground only attached for the purpose of the convenient working of the vein so located; no rights to any other vein, except the one upon which the location was made, were given. Under the law then in force the surface ground, with the vein located, varied, controlled as it was, in a great measure, by local rules, or, in their absence, by the judgment of the land department in each particular case, as to the area necessary for the convenient working of the mine, so that, as might be expected, the patents issued under the law prior to the act of 1872 embrace surface areas different and irregular in form. By this latter act a marked change was effected. The surface area which could be controlled by one location was definitely fixed, and this area being extensive, it was necessary that rights therein should be definitely declared. The rights of the locator to the mineral which might exist underneath such surface area was no longer limited to the one vein upon which he made his location. By section 2322, *supra,* it is expressly provided, that from and after the passage of the act of which it forms a part, the locators of all mining claims theretofore or subsequently made to which no adverse.

rights had attached on the tenth day of May 1872, upon compliance with the laws and regulations governing their title, shall have the exclusive right of possession and enjoyment of the surface included within the lines of such locations, and of all veins throughout their entire depth apexing inside of such surface lines extended downward vertically, although such veins might so far depart from a perpendicular in their course downward as to extend outside of the vertical side lines. This section, standing alone, would seem to be clear, explicit, and unambiguous. It provides a test by which the right of a locator to a vein inside of the lines of his location extended downward vertically should be determined, namely, if the top or apex of a lode was within the boundaries of his claim, as above designated, then he should be the exclusive owner thereof, provided, of course, that no adverse rights thereto existed at the date of his location.

It is claimed by counsel for appellant that this section, by implication, excepts cross veins because no extralateral rights are given such veins, such rights being measured by the end lines of the claim extended in their own direction, and as cross veins would not intersect these lines, no extralateral rights would attach to such veins. That question is not involved in this case. Appellant is making no claim to any portion of the veins in controversy by reason of extralateral rights; and besides, the vein of the Victor Consolidated is given no such rights, because by the judgment appellee is only declared to be the owner of that portion of the vein within the boundaries of its claims extended downward vertically. The most that can be said for this section on account of its phraseology is that cross veins are not given extralateral rights; and yet we can conceive of a location where a cross vein upon its strike may cross the one upon which the location is made and intersect both end lines; but granting, for the sake of the argument, that veins crossing the one upon which the location is made have no extralateral rights (but upon that question we express no opinion), this would only operate as a limitation as to such rights, and

not as to others which would attach by virtue of a location, for naming limits of a grant is not equivalent to saying that nothing is granted which does not extend to those limits. *Del Monte M. Co. v. Last Chance M. Co.*, 171 U. S. 55. It is by virtue of section 2336, particularly, that counsel for appellant contend that the portion of the vein of the Victor Consolidated in controversy belongs to the latter, their position being that by this section cross veins are excepted from the operation of section 2322. It is the section construed in *Branagan v. Dulaney*. The rule adopted by the court in construing it in that case is an arbitrary one and never resorted to except in cases where the different sections of an act are in conflict, namely, " as between conflicting sections in the same statute, the last in order of arrangement will control; " and applying this doctrine, reached the conclusion that under section 2322, the locator of a claim acquired no rights to cross veins apexing within the limits of his location.

The rule above announced is only applicable when there is an irreconcilable conflict between the different sections of the same act and no reasonable construction will harmonize the parts; but as the two sections under consideration do not conflict in all their terms, the real question presented in construing them is, does the latter qualify the former? It is presumed that each section is intended to coact with every other of the act of which it is a part, and that no one is intended to antagonize the general purpose of the enactment. Sutherland's Stat. Constr. § 160. It is also a rule that in order to ascertain the legislative intent every section of an act is to be construed — that it is to be construed as a whole (*supra; Parkinson v. State*, 74 Am. Dec. 523), and that construction which renders the whole act harmonious and gives effect to every clause and part is to be favored. 23 Ency. of Law, 309; *Brooks v. Mobile School Comrs.*, 31 Ala. 227; *People v. Burns*, 5 Mich. 114; *Patterson v. Spearman*, 37 Iowa, 36.

In *Branagan v. Dulaney* it was assumed that the "space of intersection" meant the intersection of the veins of con-

flicting cross locations, and as the mineral in this space was given to the prior location, and none other, that, therefore, the junior locator of a cross lead had all the ore of his vein within the space of intersection of the conflicting locations, save at the space where the veins intersected. Section 2336 does not purport to provide for the location of cross veins over territory included within a prior, valid and subsisting location. Its purpose appears to be to fix the rights of the claimants of such veins, to settle what might otherwise be conflicting rights between claimants of veins crossing or intersecting each other, and provide easements for the benefit of the claimants of such veins (*Wilhelm v. Silvester, supra*); and unless in making such provision it impliedly gives the junior cross claimant the ore of his vein, except at the point where it intersects the vein of a senior location, the doctrine announced in *Branagan v. Dulaney* cannot be upheld, so that in order to determine what rights are conferred upon a junior cross claimant under this section, the real question is, what is meant by the "space of intersection?"

The words employed in a statute are to be construed with reference to its subject-matter and the objects sought to be attained (23 Ency. Law, 322; *Brewer's Lessee v. Blougher*, 14 Peters, 178; Sedgwick's Stat. Constr. 359), as well as the legislative purpose in enacting it, and its language should receive that construction which will render it harmonious with that purpose, rather than that which will defeat it. Sedgwick's Stat. Constr. 319; *Taylor v. Board of Comrs.*, 67 Ind. 383; *People v. Lacombe*, 99 N. Y. 43. When ambiguous, its general intent as gathered from the statute, furnishes a key by which its ambiguities may be solved, and thus its words given that meaning which will harmonize with that intent. Sutherland's Stat. Constr. §§ 218, 219. Conditions with reference to the subject-matter of the act, which it is apparent from its context it was necessary to provide for, may also be considered in ascertaining what is meant by that which is apparently ambiguous. *People v. Lacombe, supra.* It is evident from the provisions of section 2322 that the in-

tent of congress was to give to the locator of a claim to which no adverse rights had attached, every vein apexing within the surface boundaries of his location, unless its intent is negatived by section 2336. The words "intersect" and "cross" as used in this section, are not strictly synonymous, and in using both, it must be presumed intended to provide for different conditions. Veins might intersect, either on their strike or dip, and not cross; in that event, it was necessary to provide which location should have the ore at the space of intersection, and it was declared that the prior location should have the ore within that space. In case they crossed, then a further provision was necessary, and it was provided that the junior location should have the right of way through the space of intersection for the convenient working of his mine. From a casual reading of this section, it might be inferred that the "space of intersection" meant the intersection of the veins, but that does not necessarily follow, when its meaning, as ascertained by one or more of the canons of construction which may be invoked, is ambiguous, or different conditions exist which would control its import, or if by giving it that limitation, the section in which it occurs conflicts with other portions of the act. Previous to May 10, 1872, as before noticed, no rights attached to any vein except the one upon which the location was made. All rights which had attached previous to that date were in no manner disturbed. Section 2322, *supra*, and 2344, *supra*. In case of conflicting cross locations made prior to that date, each locator would hold the vein located upon up to the point where they intersected on their strike. It was necessary to settle which should have the ore within the space of intersection of such veins, and if they crossed, what further rights the junior locator should have. This was done. In such case intersection would clearly mean the intersection of the veins. In case of locations made under the act of 1872, or prior to that date, which were substantially parallel, the respective veins in each might either intersect or cross upon their dip, in which event it would be necessary

to provide which should be entitled to the ore within the space of vein intersection; and here again the meaning of "space of intersection," or the subject to which it refers, is the intersection of the veins. Again, under the conditions last noticed, the veins might unite, and to provide for this contingency, it was declared that the prior location should take the vein below the point of union, including all the "space of intersection," which in that instance also refers to the intersection of the veins.

It may be urged that the construction thus far of this section is in conflict with section 2322, for the reason that under the latter the ownership of the space of intersection would depend upon which vein filled that space. Granted that this may be true, then we must invoke the rule that an act must be construed as a whole, and if the construction of section 2336 so far given modifies section 2322, it is not violating any rule applicable to the construction of different sections of the same act, which apparently conflict. This construction, however, does not cause any conflict between the two sections. The former gives to the locator the veins to which his rights attach throughout their entire depth, and if upon their strike, limiting the latter to rights which vested prior to the 10th day of May, 1872, or in descending into the earth a body of ore bounded by the foot and hanging walls of his veins, extended in their general course, has been intruded, from another source, or if in descending they unite with other veins, these are not reasons why he should not be the owner of such spaces of intersection, or enlargements of his veins, caused by intersecting or uniting with others, but, on the contrary, according to the terms of section 2322, he should be, provided, of course, that his title is prior to that of the location of the veins intersecting or uniting with his; so that the construction of these sections, under the conditions noted, render them harmonious, and section 2336 simply recognizes that in conflicts in such cases priorty of title should govern, a test which is clearly in harmony with section 2322, and limits the provisions of section 2336 thus far to easements only.

It may also be said that an easement would exist in favor of a junior claimant to follow his vein through the space of intersection caused by veins crossing upon their dip, because by section 2322 the locator is entitled to follow a vein in its course into the earth outside the vertical side lines of his location. This may be true, but as to veins crossing on their strike, no such right is impliedly given by that section, and as we have endeavored to demonstrate, such a right was necessary under conditions above noted. In case of locations made subsequent to the act of 1872 which cross each other, or those made under that act which likewise conflicted with locations made prior to the date it took effect, it was also necessary to provide for possible conditions, namely, the respective rights of the claimants of such locations, within the conflict of their claims, and particularly for a right of way for the junior claimant; and the vital question now to determine, is, what is meant by the space of intersection in such cases as employed in section 2336, and which party would own the ore of the vein of the junior location within that space. We again reiterate that the clear intent of section 2322 was to give the locator of a claim to which no adverse rights were in existence at the date of his location, all veins apexing within its surface boundaries. That eminent jurist, Mr. Justice Brewer, with his extended experience in mining litigation, certainly spoke advisedly, in *Del Monte M. Co. v. Last Chance M. Co., supra* (although the precise question now being considered was not there presented), when he said, in speaking of the rights of a locator under the provisions of this section: "Every vein whose apex is within the vertical limits of his surface lines, passed to him by virtue of his location. He is not limited to only those which extend from one end line to another, or from one side line to another, or from one line of any kind to another; but he is entitled to every vein whose top or apex lies within his surface lines." To the same effect is the language employed in 101 Cal. *supra*. By that section, he has been given title to all such veins. Such being the case, was it intended by section 2336 to modify that grant, or vest title in a cross

claimant to any part of a vein apexing within the boundaries of a prior, valid location, and especially, what rights were intended to be granted or fixed under the conditions now being considered?

It provides that in such cases priority of title shall be the test by which the ownership of the ore at the space of intersection shall be determined.     That is in accord with the rights conferred by section 2322.     So stating, however, is not equivalent to a grant.     That language does not import that an exception is carved out of an estate which has already passed.     Under the facts now in mind, the senior locator, by virtue of section 2322, would own the ore of the junior cross vein within the boundaries of his location, and before that right could be divested under section 2336, it must appear from the wording of the latter that such right is thereby expressly excepted.     That the language of this section is not susceptible of the construction that creates such an exception, it seems to us is clear, when we bear in mind that which we have already stated—that it does not pretend to deal with the location of cross veins over senior valid locations, but the purpose of which was to provide for easements and settle rights which otherwise might be doubtful or the subject of controversy, without some further declarations than those contained in section 2322; and so we conclude that to render the two sections harmonious, the space of intersection as used in section 2336, when applied to the facts now being considered, means the intersection of the claims.     Barringer & Adams, Law of Mines and Mining, 472, 473.

Under section 2322 no rights were given the owner of a location crossing a prior one to invade the latter for any purpose in following his vein upon its strike.     This was an important matter; without such right a portion of his claim might be rendered valueless, but if the expression, "space of intersection," is limited to the intersection of veins as the space through which he should have a right of way for the convenient working of his mine, it would be of no avail, for he would have no right under which he could reach that ease-

ment; and so again, in order to recognize one which would be of any value to the junior cross claimant, the space of intersection must also mean the intersection of the claims. Morrison's Mining Rights (9th ed.), 115. The learned author of the work just cited, in treating the subject of title to ore included in the space of intersection as between conflicting cross locations, under section 2336, gives the following cogent reasons why, in his opinion, as between such locations, the owner of the junior has a right of way through the senior, but no right to the ore of the claim which he crosses :

" It was within the power of congress, by a subsequent clause, to have made the crossing lode an exception carved out of the general grant of the words of the previous section, but has it attempted so to do ? The only grant of section 2336 is the right of way, which of itself implies that it is not a grant of the vein, but of an easement, to which the estate of the prior location is made servient."

" To give any part of the space of intersection to the holder of the later location would be to take from the older location something already granted to it. To create an exception out of his grant as he originally takes it, under act of Congress, would require in the wording of the act expressions as strong as are required to create an exception in a deed. An exception is equivalent to the reconveyance of land already conveyed. A right of way is not an exception, but a reservation, which may be inferred from any wording indicating an intention to create an easement. It takes nothing from the body of the grant of the first locator, but compels the first locator to use or hold his grant or claim subject to a right or privilege to the junior or overlapping claimant of reaching the other end of his claim by passage through the senior location."

Under the conclusion reached in Arizona, California and Montana, in the cases above cited, the ore within the space of overlapping claims would belong to the owner of the senior location. In the Arizona case, that conclusion was reached upon the ground that the expression, " space of in-

tersection " meant intersection of the veins; that they might so intersect upon either their strike or dip; but as to the former, it was limited to locations made prior to the 10th day of May, 1872. The learned judge who wrote the opinion in that case, appears to have given it careful consideration, but in seeking to harmonize the two sections it seems to us fell into the error of (1) holding that the space of intersection meant intersection of veins only; (2) imposed a limit upon the provisions of the section when he announced that it only applied to the intersection of veins upon their strike, under locations made prior to May 10, 1872, which is not warranted, either expressly or by implication; and (3) by so doing necessarily deprived a junior location, made under the act of 1872, of the right of way across a senior location, if the former crossed the latter. In the California case, the eminent jurist, who wrote the opinion, seems to have entertained similar views regarding the application of this section to rights which vested prior to May 10, 1872, but except as to those rights, inclined to the conclusion that this section only referred to the intersection of veins upon their dip, which would also result in depriving a junior cross claimant of a most important right. We think that Chief Justice Beatty, who concurred in the opinion in that case, more nearly announced the true doctrine when he said:

"I think, however, that too much is conceded, both in the opinion of the court and in the argument of counsel for respondent, in assuming that the provisions of section 2336 cannot be applied to locations made since the passage of the mining law of 1872 on veins which intersect upon their strike, without bringing it in conflict with the plain terms of section 2322. This wholly unwarranted assumption has been the source of all the trouble and difficulty which the land office and some of the state courts have encountered in their attempts to construe provisions of a statute which are in perfect harmony, but which have been erroneously supposed to be inconsistent."

The opinion in the Montana case is not altogether clear,

but seems to limit the space of intersection as applied to the facts there presented, to the intersection of the conflicting claims, but does not enter into a discussion of the subject; so that although we agree with the conclusion reached in each of those cases, we cannot accept the limitations imposed upon the provisions of this section, or indorse the reasons advanced by the learned writers of the opinions in the Arizona and California cases.

Our conclusion is, that the provisions of section 2336 apply to locations made under the act of 1872 as well as before, refer to the intersection or crossing of veins either upon their strike or dip; that the space of intersection, in determining the ownership of ore within such space, means either intersection of veins or conflicting claims, according to the facts in each particular case, and grants a right of way to the junior claimant for the convenient working of his mine through such space upon the veins (underneath the surface) which he owns or controls outside of that space. This construction renders the two sections entirely harmonious, gives effect to every clause and part of each, and in so far as section 2336 regulates or in any manner provides for rights as between conflicting claims, it applies only to intersections consistent with all the provisions of section 2322.

As we understand the rulings of the land department in issuing patent for conflicting mining claims, there is always excepted from the surface of the junior that portion conflicting with the senior, as well as all veins apexing within such conflict. This practice is in accord with our views, and, although such a construction would not be controlling, the interpretation put upon the act by those whose duty it has been to construe, execute, and apply it, is entitled to much weight. 23 Ency. Law, 339; *Frost v. Pfeiffer*, 26 Colo. 338; *People v. Le Fevre*, 21 Colo. 218.

The receiver's receipt, as well as the patent issued appellant, excepted therefrom all veins apexing within the conflict between its claim, the Victor Consolidated, and those of appellee. The patents to the latter granted all such veins, and

thus all rights attaching by virtue of priority of location have been preserved to appellee. The location of the Victor Consolidated was junior to that of the claims of appellee, and from this fact, and the views expressed, it follows that appellant cannot complain of the judgment of the lower court in so far as it awards to appellee the vein of the Victor Consolidated, and all veins apexing within the boundaries of the claims of the latter, and awarded damages for the removal of ore. These views are in conflict with the case of *Branagan v. Dulaney*, and that case, as, also those of this court following it, in so far as they conflict with the doctrine now announced regarding conflicting cross claims, are overruled. The language of the judgment of the lower court regarding the rights of appellant in the conflicting territory, is very explicit, but only extends to acts of trespass, and does not prohibit those which it may exercise therein by virtue of its ownership of the Victor Consolidated claim.

The determination of the second question presented involves a construction of section 2323, *supra*. The contention of counsel for appellant is that in all patents for lode claims, blind leads are excepted, and that the patentee takes no title thereto by virtue of patent. In answer to this, we have only to advance one step further in the construction of section 2323, and call attention to the fact that the test there applied by which the ownership of veins embraced in a valid, subsisting location is determined, is, that they apex within the boundaries of his claim extended downward vertically, without regard to where such apexes may be with reference to the surface ; so that again the question presented is, does section 2323 conflict with, or in any manner modify, the provisions of section 2322, and in construing them the same rules must be observed relative to the construction of an act containing different sections that have already been invoked. The former provides what rights may be acquired to blind veins discovered in a tunnel run for the development of the vein, or for the discovery of mines, but upon what ground may such tunnel be run, or within what territory must the blind

leads discovered therein be located, in order to give the discoverer any rights thereto? A valid location of a mining claim, so long as it is in full force and effect, operates as a bar to a second of the premises so claimed. *Belk v. Meagher*, 104 U. S. 279; *Gwillim v. Donnellan*, 115 U. S. 45; *Del Monte M. Co. v. Last Chance M. Co.*, 171 U. S. 55. The only exception is that a given location leaves open to others such rights therein as do not attach by virtue of such location; in other words, that a location only carries with it such rights as it is entitled to under the law by virtue of which it is made, and that rights not attaching are reserved to others. It is upon this ground that appellant contends that its right to the blind leads in question attach; that is, that under section 2323, these veins are impliedly excepted from the locations and patents of appellee's claims. If such a conclusion can be deduced from the sections under consideration, they are hopelessly in conflict, for, first there is granted all veins, the ownership of which is determined in the manner we have designated, including blind, and then immediately following the grant to the latter is withdrawn. A location can take no rights which conflict with a prior, valid one, so long as it is kept alive. The law contemplates, and the authorities recognize, that the very life of a mineral location depends upon the fact that it is made upon unappropriated mineral domain, and with the one exception already noticed, this requirement extends to the entire location, that is, it cannot embrace any ground, nor can it initiate any rights within the boundaries of a prior, valid, subsisting location, except those reserved from the latter. This rule extends to all classes of mineral locations; in other words, priority determines the rights between conflicting locations. The tunnel of appellant was commenced upon ground open to location, but at the time it was located and work thereon commenced, the ground embraced within the claims of appellee had already been located and claimed as lode claims, so that the rights of appellee to the ground within the boundaries of its claims, and the leads in question, had attached before ap-

pellant attempted to initiate any title thereto, and therefore, none attached by virtue of the location of, or work upon, its tunnel site, unless it appears that by virtue of section 2323 a tunnel for the discovery of blind leads may be projected across and extended into prior, valid, subsisting locations, and title to the blind leads discovered within the boundaries of such claims thus be secured. It provides how inchoate rights to blind veins may be initiated; how they may become absolute; but nowhere does it in terms, either expressly or impliedly, declare that for these purposes it may be projected into or across prior, valid, locations. To give it the interpretation that it does is to inject a meaning of which it is not susceptible, renders it irreconcilable with the provisions of the section preceding, and overthrows the doctrine of priority—the foundation upon which mining rights rest. It does not provide that under a location for tunnel site purposes a right is granted to search for minerals in lands belonging to another, or that thereby a location for such purposes can be carved out of appropriated public domain, while limiting it to locations for tunnel site purposes to ground not previously appropriated renders it harmonious with section 2322. That the latter was the clear meaning and intent of congress in passing the act, of which these two sections form a part, is apparent from the further reading of section 2323, which in terms provides that locations on the line of the tunnel contemplated by this section, of veins not appearing on the surface made by others after the commencement of work thereon, and while it is being prosecuted with reasonable diligence, shall be invalid, a clear recognition of the controlling principle of priority. Counsel for appellant assert that the *Enterprise M. Co. v. Rico-Aspen M. Co.*, 167 U. S. 108, and *Ellet v. Campbell*, 18 Colo. 510, affirmed in 167 U. S. 116, are authority for their propositions, that blind leads are excepted from all locations and patents; that no rights to such leads attach until discovered; that a tunnel site may be projected across and its tunnel extended underneath previous valid, subsisting locations, and title to blind

leads discovered in such tunnel within the boundaries of such claims not known to exist previous to the commencement of work thereon, may be thus acquired by the owner of such tunnel. Neither of such cases so hold, and while they cannot be said to be directly in point, because the facts in the case at bar and those are entirely different, yet by analogy the principle upon which the right to blind leads discovered and located under the section of the statute relative to tunnel sites which was applied in those cases, is the same as that upon which we base our decision here, viz, priority of location, for in each of those cases the tunnel site was located prior to the date of the location of the lode claims within territory embraced within the tunnel site location, and within the boundaries of which the blind leads were discovered and located, which were the subject of controversy. It was upon this ground, as we read and understand the opinions in these cases, in connection with the facts, that the inchoate rights of the tunnel claimants to such leads were predicated and by virtue of which, when discovered on the line of the tunnel, they become absolute. On the subject under consideration, one further question needs to be determined, namely: Has appellant a right of way for its tunnel through the territory of appellee? It is contended by counsel for appellant that, under section 2338, Rev. Stat. U. S. and section 3141, Mills' Ann. Stats., it is entitled to such right. The first of these sections provides that in the absence of necessary legislation by congress, the legislature of a state may provide rules for working mines involving easements, drainage, and other necessary means to their complete development, and that these conditions shall be fully expressed in the patent. The section of Mills' Ann. Stats. referred to provides that a tunnel claim, located in accordance with its provisions, shall have the right of way through lodes which may lie in its course; but it will be observed that this section only refers to tunnels located for the purpose of discovery, and if any of its provisions are still in force, which appears to be doubted in *Ellet v. Campbell, supra,* they can have no

application to the case at bar, because the section of the Revised Statutes only provides for easements, for the development of mines; and the section of Mills' Ann. Stats. relied upon does not attempt to confer any such rights, but is limited to the one purpose of discovery. In this respect it has been clearly superseded by the act of congress, so that if appellant is entitled to the right claimed, it must attach by virtue of some provision of this act.

Mining rights are statutory, but not purely so. They relate to real estate, and such rights as are not defined or limited by statute are still controlled by the rules of the common law. Such rights as are conferred by a valid, prior location, so long as it remains in full force and effect, are preserved from invasion and cannot be infringed upon or impaired by subsequent locations (Lindley on Mines, § 363), and are as fully protected under the rules of the common law as any other classes of real estate. Under the statutes the subsequent locator has no right to penetrate a senior valid, subsisting location underneath its surface boundaries extended downward vertically, except for the purposes specified in the mining laws. We will not undertake to specify what these exceptions may be, but so far as they are not fixed by statute, the possession and enjoyment of the ground underneath the surface of a valid, subsisting location cannot be invaded. These exceptions do not include a right to drive a tunnel through such a location for the purposes of discovery.

We are not aware that the precise questions presented for our determination, which we have designated as proposition second in the former part of this opinion, have ever been passed upon by an appellate court. In the case of *Stratton v. Gold Sovereign M. & T. Co.*, reported in 1 Mills's Legal Adviser, 350, in which case complainant brought an action to restrain defendants from extending a tunnel through the claim of the former, which had been located prior to the date of the tunnel site, the defendants answered that they were driving such tunnel for the avowed purpose of discovering

and claiming blind veins within the territory of complainant's claims. Complainant applied to Judge Hallett for a temporary injunction, which he granted, and in the course of his opinion, said:

"Chapter 6 of the Revised Statutes provides for three kinds of locations on the public mineral lands, which, in common speech, are called "lode locations," "tunnel locations" and "placer locations." When a location has been properly made in either class, and so long as it shall be fully maintained by use and enjoyment, or by patent, the territory embraced in such location is not subject to adverse location by a claimant of the same class or any other class. The reason is that the territory covered by such location has been severed from the public domain and has become private property which is no longer open to a new appropriation."

Our construction of section 2323 is that a tunnel site can only embrace unappropriated public domain, and that under it no rights are conferred to extend a tunnel through previous valid, subsisting locations. From the record before us, appellant had no right to invade the premises of appellee, through its tunnel, and in the absence of any proof to the contrary, the presumption attaches that all veins discovered in that part of its tunnel under appellee's claims belong to the latter (*Wakeman v. Norton*, 24 Colo. 192), and the judgment of the court, that appellee was the owner of these veins and enjoining appellant from further extending its tunnel into, or using that portion of it under the claims of appellee, is correct.

The final question passed upon by the trial court, under the stipulation, relates to the offer of appellant to prove that at the time of the location of its Ithica tunnel site, no ore had been discovered in the Monarch and Mammoth Pearl. This offer was denied. At the time the tunnel site was located and work commenced thereon, receiver's receipts had been obtained for these claims, upon which patents subsequently issued. These evidences of title took effect by relation as of date of the location of the respective claims.

Lindley on Mines, § 783. As against a collateral attack, the action of the land department in issuing such patents conclusively settled that all steps necessary to constitute a valid location of these mining claims had been taken, which included the discovery of mineral. This question has been so frequently decided that we do not deem it necessary to discuss it. Lindley on Mines, § 777; *Davis's Admr. v. Weibold*, 139 U. S. 507; *Peire v. Wells*, 6 Colo. 406; *Justice M. Co. v. Lee*, 21 Colo. 260; *Smelting Co. v. Kemp*, 104 U. S. 636; *Steele v. Smelting Co.*, 106 U. S. 447. It is contended on behalf of appellant that this principle is not applicable as between tunnel site and lode locations, because its rights were not involved in the patent proceedings. As to inchoate rights which attach to a tunnel location, this may be true, but it had none unless it successfully attacked the title of appellee in apt time, for the location of appellee's claims was prior to the location of the tunnel site. At the time of that location, receiver's receipt had issued upon the Mammoth Pearl and Monarch. We cannot understand how, upon any possible theory, the rule announced is not applicable as between a tunnel site location over a prior lode location upon which a patent has already issued. So long as the title to the claims of appellee was only evidenced by receiver's receipt, it was still subject to an attack in a way; but when patent finally issued upon these claims, it conclusively settled, as against the junior location of appellant's tunnel site, that all steps necessary to constitute a valid location of appellee's claims had been taken.

Errors are assigned upon the action of the court below in denying appellant's petition to remove the cause to the circuit court of the United States for the district of Colorado. No argument is made on this assignment, and we therefore decline to consider or pass upon it.

A further error assigned and argued by appellant is that the court erred in overruling its motion for leave to develop the blind veins in its tunnel within the lines of appellee's claims for the purpose of establishing their character. Its

acts in attempting to initiate title to these veins was a trespass which it was not entitled to continue under any leave of court.

This disposes of all the questions argued, and, finding no error in the record, the judgment of the district court is affirmed.

*Affirmed.*